IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| TYRONE EVERETT PAYNE,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF MISSOULA and BEN SLATER,<br><br>Defendants. | Cause No. CV 10-00056-M-DWM-JCL<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

This matter comes before the Court on Plaintiff Tyrone Payne's Motion for Summary Judgment (Court Doc. 30), Defendant City of Missoula's Motion for Summary Judgment (Court Doc. 32), and Defendant City of Missoula's Motion to Strike Plaintiff's Statement of Undisputed Facts. (Court Doc. 48).

The Court having found no genuine issue of material fact, it will recommend that Mr. Payne's Motion for Summary Judgment be denied, the City of Missoula's Motion for Summary Judgment be granted, and that the Court should sua sponte grant summary judgment for Office Slater.

## I. STANDARD

A party is entitled to summary judgment if they can demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).  That is, where the documentary evidence permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.  The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.  *Id*.  Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment.  *Id*.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial.  If the evidence is merely colorable or is not significantly

probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Anderson*, 477 U.S. at 252.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010).

## II.    STATEMENT OF FACTS

In the early morning hours of March 16, 2009, Defendant Ben Slater, a Missoula Police Officer on routine patrol on South Reserve Street, saw a car driven by Plaintiff Tyrone Payne.

The subject of Defendants' Motion to Strike Plaintiff's Statement of Undisputed Facts is a map apparently drawn by Mr. Payne which suggests Officer Slater observed Payne's appearance at a gas station at South and Reserve. There is no testimony to authenticate or support this map. Nevertheless, in construing

Payne's filing liberally, the Court will deny the Motion to Strike and presume for purposes of this Order only that it is disputed where Officer Slater first observed Payne's vehicle.

When the light at South Reserve and Brooks Streets turned green, Payne pulled away from the intersection in a "stuttering" fashion heading east on Brooks Street. Considering that it was almost 3:00 a.m., the bars had closed less than an hour before, and the driver of the vehicle seemed to be having difficulty operating the car, Officer Slater wanted to determine whether the driver may be intoxicated or if there was some type of problem, mechanical or otherwise, with the car.

Officer Slater radioed to the dispatch center and requested registration information for the license plate number. Based on the response from the dispatch center, Officer Slater learned that the car was registered to Kevin Michael Payne. Officer Slater was familiar with Kevin Payne, an African-American, based on previous law enforcement encounters he had with him.

As the car traveled down Brooks Street, Officer Slater observed it drift to the right and then jerk back into the driving lane. Officer Slater then manually activated the in-car video and audio system.

At the intersection of Brooks and Stephens Avenue, the vehicle turned left, again in a "stuttering" fashion, and made an illegal lane change by entering the

-4-

outer lane, rather than the driving lane nearest the center line, in violation of Mont. Code Ann. § 61-8-333(1)(b). No obstruction or impediment prevented Payne from turning into the nearest lane. The videotape shows it was practicable to do so, and Payne admits that "[n]o other motorists were on the road."

After Officer Slater observed Payne's traffic violation, he initiated a stop of Payne's vehicle. Officer Slater determined he had probable cause based on the observed violation. The stop was made at approximately 2:56 a.m. As Officer Slater got out of his patrol car and approached the driver's side of the car from the rear, he recognized for the first time that the driver was an African-American male. Officer Slater testified that prior to approaching the vehicle he did not know whether the driver was African-American or male/female.

Because Officer Slater knew the car was registered to Kevin Payne, and he knew Kevin Payne was an African-American male, he assumed the driver was Kevin Payne. Based on this mistaken assumption, Officer Slater said: "How's it goin' Kevin? Ben Slater. Missoula Police. Can I get your driver's license?" as he got to the driver's side window of the car.

The driver was traveling with a young woman. Officer Slater called for backup. Officer Bob Franke responded shortly thereafter.

Payne did not have a driver's license but presented an expired Connecticut

-5-

ID card to Officer Slater. Payne was also unable to present proof of the vehicle's registration or insurance. Payne stated that the vehicle belonged to his cousin, Kevin Payne, who kept the registration and proof of insurance on his person.

Officer Slater informed Payne that he had been stopped for an illegal lane change. He then asked if Payne was having a difficult time operating the vehicle, to which Payne and the young woman responded that they were, and that the vehicle was frequently stalling.

After running Payne's information through dispatch, Officers Slater and Franke were informed that Payne was a convicted sex offender in Connecticut. Officer Slater asked Payne about his prior criminal history and Payne admitted he had been incarcerated for robbery and a "domestic situation with a girlfriend of mine." Officer Franke asked Mr. Payne if he had registered as a sex offender in Montana and Payne reported he had not.

Payne was not arrested at the time of the March 16, 2009, encounter. Despite making an illegal lane change, having no valid driver's license, no registration, no proof of insurance, and was not wearing a seatbelt, Payne was only cited for operating a vehicle without a valid driver's license.

Officer Slater explained the ticket to Payne, and told him he needed to appear in City Court no later than March 30, 2009. Officer Slater asked Payne if

he had any questions or needed instructions to the courthouse.  When Payne said no, Officer Slater showed him where the address of the courthouse was printed on the citation form.  Officer Slater told Payne he could call a tow truck, or Payne and his female companion could push the vehicle out of the traffic lane to avoid incurring the charges for a tow.  Payne opted to push the car out of the street.

Officer Slater reminded Payne to lock his car and offered to call a taxi for him.  Payne and his companion told the officers they would just park the car and walk.  Officer Slater responded: "Okay.  With that, I bid you adieu.  Have a good evening, okay?"

On March 24, 2009, Payne was arrested for failure to register as a sex offender.  Payne was convicted of the offense after a jury trial.  Payne was sentenced on January 29, 2010, to the Department of Corrections for ten years, with five years suspended.  Upon learning of Payne's incarceration, the City dismissed the misdemeanor traffic violation case.

The Missoula Police Department currently has 99 police officers in its employ.  Over the past decade, the Missoula Police Department had a total of 335,451 calls for service (January 1, 2000 through April 30, 2010).  In connection with the 335,451 calls for service, there were just two citizen complaints of racial profiling and discrimination.  In both cases, the Missoula Police Department

investigated the complaint and the officers were exonerated. In connection with the 335,451 calls for service, there were no citizen complaints of unlawful traffic stops lacking the requisite reasonable suspicion or probable cause.[1]

Officer Slater received his diploma from the Montana Law Enforcement Academy on March 28, 2008. In his first week of training at the Law Enforcement Academy, Slater received four hours of training on racial profiling and cultural awareness. On April 9, 2008, Officer Slater received two hours of training in cross-cultural communications at an Intensive Mini-Academy.

## III.  ANALYSIS

### A.  Fourth Amendment

Payne first claims he was subjected to an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution when he was racially profiled as an African American and pulled over by Officer Slater with no reasonable suspicion and, at least in part, because of his race. He alleges the grounds for the stop were subjective and coerced.

Payne argues Officer Slater had no reasonable suspicion to follow him and record the incident. He contends Officer Slater coerced him into making the illegal

---

[1] While there may not have been any "citizen complaints" of unlawful traffic stops, it seems implausible that no one challenged the legality of a Missoula Police Department traffic stop (at least in court) in the past ten years.

turn by following him when he turned onto Stephens causing Payne to believe Slater wanted to pass.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." To establish that a seizure violated the Fourth Amendment, a plaintiff must show an unreasonable "governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). A traffic stop is a seizure within the meaning of the Fourth Amendment. *United States v. Garcia*, 205 F.3d 1182, 1186 (9th Cir. 2000) citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. U.S.,* 517 U.S. 806, 810 (1996). Arrests for crimes committed in the presence of the arresting officer are reasonable under the Constitution. *Virginia v. Moore*, 553 U.S. 164, 176 (2008).

Although Payne argues he was "coerced" into not turning into the nearest turn lane, the video negates this argument. It is clear from the video that Officer Slater had, at the very least, reasonable suspicion to believe Payne violated Mont. Code Ann. § 61-8-333(1)(b) when he failed to turn into the nearest lane even

-9-

thouugh it was practicable to do so.  This turn is clearly depicted on the video and it was observed by Officer Slater.  Therefore, Officer Slater acted reasonably and not in violation of the Fourth Amendment.

While Plaintiff argues about the subjective intent of Officer Slater, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  *Whren*, 517 U.S. at 813.  Here, the video demonstrates there was probable cause to believe a traffic violation had occurred and Payne admits in his Complaint that a violation occurred.  Defendants are entitled to summary judgment on Payne's Fourth Amendment claim of illegal seizure.

### B.  Equal Protection

Payne's second claim is that he was racially profiled by Officer Slater in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  The Equal Protection Clause protects individuals against certain types of discrimination.  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."  *Washington v. Davis*, 426 U.S. 229, 239 (1976).  A claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires a showing of purposeful discrimination.  *See e.g., Crawford-El v. Britton*, 523 U.S.

574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

> To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. at 239-40).

Payne produced no evidence of racially discriminatory intent or motive. In *Bingham v. City of Manhattan Beach*, 341 F.3d 939 (9th Cir. 2003) the Ninth Circuit held that in order to avoid summary judgment on an equal protection claim, an arrestee "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated." *Bingham*, 341 F.3d at 948-49 (internal punctuation and citation omitted) (overruled on other grounds *Edgerly v. City and County of San Francisco*, 599 F.3d 946 (9th Cir. 2010)).

This case is quite similar to *Bingham*. Mr. Bingham alleged he had been pulled over without probable cause by a white officer on the basis of race. Bingham argued the following four facts were sufficient circumstantial evidence to give rise to a question of material fact as to whether he was stopped for discriminatory reasons: (1) the officer was white and he is black; (2) the officer

-11-

was able to see his race before he pulled him over; (3) the City where he was arrested was predominantly white; and (4) although he was allegedly pulled over for erratic driving, the officer never issued a citation for that behavior. *Bingham*, 341 F.3d at 948. In granting summary judgment to the officer, the district court found the record devoid of any evidence that race motivated the stop. The Ninth Circuit affirmed.

In this case, as in *Bingham*, Officer Slater is white and Payne is black, Missoula is a predominantly white community, and although Payne was pulled over for making an improper turn, he was not issued a citation for that behavior. As in *Bingham*, there is a conflict in the evidence whether Officer Slater knew Payne's race prior to approaching the car on foot after the traffic stop. Even assuming Officer Slater knew Payne's race before he pulled him over, that is still insufficient circumstantial evidence under *Bingham* to establish that race motivated the stop.

The Court has also considered the in-car camera video and audio taken of the stop. In that video, Officer Slater acted professionally and respectful to Mr. Payne. As Defendants point out, there were a number of violations for which Mr. Payne could have been cited and he was not. There is nothing on this video to indicate racial animus or discriminatory intent.

Moreover, the City presented evidence regarding the lack of complaints regarding racial profiling within the City of Missoula Police Department.  This evidence was unanswered by Payne.

The Court finds that Payne has not presented sufficient evidence to establish that he was stopped for discriminatory reasons.  As such, the equal protection claim fails.

## IV.  CONCLUSION

Payne's claims are insufficient to survive summary judgment.  Payne has, as a matter of law, failed to produce sufficient evidence to prove a violation of his Fourth Amendment rights or a violation of the Equal Protection Clause of the Fourteenth Amendment.  "[A] district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'"  *Gospel Missions of America v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir. 2003)(*quoting Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982).  "Sua sponte grants of summary judgment are only appropriate if the losing party has 'reasonable notice that the sufficiency of his or her claim will be in issue.' "  *Greene v. Solano County Jail*, 513 F.3d 982, 990 (9th Cir. 2008)  (*quoting Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993)).

Here, the City of Missoula has moved for and the Court should grant summary judgment on the grounds that there was no Fourth or Fourteenth Amendment constitutional violation. The City of Missoula provided Payne with a Rand notice setting forth his obligations in responding to the motion for summary judgment. The issue of whether there was an underlying constitutional violation is determinative of both the City of Missoula's liability and Officer Slater's liability. As such, Payne had "a full and fair opportunity" to address whether or not a constitutional violation occurred by any Defendant. Therefore, the Court should sua sponte grant summary judgment for Defendant Slater as well as the City of Missoula.

As Payne failed to produce sufficient evidence to prove his claims, the Court should certify that any appeal of this matter would not be taken in good faith.

Based on the foregoing, the Court issues the following:

### ORDER

Defendant City of Missoula's Motion to Strike Payne's Statement of Undisputed Facts (Court Doc. 48) is **DENIED**.

Further, the Court issues the following:

### RECOMMENDATIONS

1. Payne's Motion for Summary Judgment (Court Doc. 30) should be

**DENIED**.

2. Defendant City of Missoula's Motion for Summary Judgment (Court Doc. 32) should be **GRANTED**.

3. The Court should sua sponte grant summary judgment for Defendant Slater.

4. The Clerk of Court should be directed to enter judgment in favor of Defendants and close this case.

5. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Payne failed to produce sufficient evidence to support his claims and as such no reasonable person could suppose that an appeal would have merit.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Payne may serve and file written objections to this Findings and Recommendations within fourteen days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the

Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 29th day of September, 2010.

        /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge